IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MISSOURI PUBLIC ENTITY RISK MANAGEMENT FUND, | ) ) ) |
| Plaintiff, | ) ) ) Case No. 05-4386-CV-C-NKL |
| v. | ) ) |
| INVESTORS INSURANCE COMPANY OF AMERICA, | ) ) ) |
| Defendants. | ) |

ORDER

Pending before the Court are Plaintiff Missouri Public Entity Risk Management Fund's ("MOPERM") Motion for Summary Judgment [Doc. # 21] and Defendant Investors Insurance Company of America's ("Investors") Cross-Motion[1] for Summary Judgment [Doc. # 27]. For the reasons set forth below, MOPERM's Motion is denied and Investors' Motion is granted.

I.      **Background**

There are no disputes of material fact in this case. MOPERM is a risk management pool created by statute to obtain liability insurance for Missouri public

---

[1] Investors has not filed a separate document captioned as a Cross-Motion for Summary Judgment, but its Suggestions in Opposition [Doc. # 27] to MOPERM's Motion for Summary Judgment is also captioned as Suggestions in Support of Investors' Cross-Motion for Summary Judgment. The Court will treat the Suggestions as the Cross-Motion for Summary Judgment, and both parties have acknowledged they treated Doc. # 27 as Defendants' Cross Motin for Summary Judgment.

1

entities and their officers and employees.  *See* Mo. Rev. Stat. § 537.700.  In 1995, MOPERM purchased an annual excess insurance policy from Investors.  At the end of the 2001 term, MOPERM renewed the policy for only two months, from December 31, 2001, to March 1, 2002.  The policy contained the following "Limits of Liability."

**Insured's Retained Limit:**

| | | |
|---|---|---|
| Item 1a. | $900,000<br>Each occurrence | Ultimate net loss as the result of any one occurrence, accident, wrongful act, error or omission because of bodily injury, personal injury, property damage, police professional liability or public officials professional liability or any combination thereof. |
| Item 1b. | [$986,200][2]<br>Aggregate | Ultimate net loss (annual aggregate) as result of all occurrences, accidents, wrongful acts, errors or missions or claims made because of the limits retained under 1a above and as further defined herein. |

**Company's Liability:**

| | | |
|---|---|---|
| Item 2a. | $100,000<br>Each occurrence | Ultimate net loss as the result of any one occurrence, accident, wrongful act, error or omission because of bodily injury, personal injury, property damage, police professional liability or public officials professional liability or any combination thereof. |
| Item 2b. | [$493,140]<br>Aggregate | Ultimate net loss as the result of any combined occurrences, accidents, wrongful acts, errors or omissions because of bodily injury, personal injury, property damage, police professional liability or public official professional liability or any combination thereof. |

---

[2]The original policy recited the Insured's Aggregate Retained Limit (Item 1b) at $6,000,000 and the Company's Aggregate Liability at $3,000,000.  The amounts indicated in the text above are modified to reflect the pro rata reduction in aggregate limits effected by the General Change Endorsement the parties signed in December 2001 to shorten the coverage period to only two months.

During this two-month coverage period in 2002, MOPERM received claims for two fatal automobile accidents. The first accident produced a single claimant named Long, who settled for $1,500,000 in damages and cost MOPERM an additional $20,005.63 in defense costs. The second accident produced two claimants named Orman and Gates. Gates settled for $949,950 in damages and cost MOPERM another $3482.71 in defense costs. Orman eventually settled for $90,000. MOPERM filed claims for both accidents, and Investors paid its $100,000 per-occurrence limit for each accident, for a total of $200,000. However, MOPERM demanded that Investors pay an additional $493,140, the amount listed in the policy as the cap on Investors' liability, because MOPERM had exceeded its own "ultimate net loss" limit of $986,200 by paying out over $2.5 million in the Long and Orman/Gates claims. Despite MOPERM's repeated demands for payment, Investors has made no payments to MOPERM beyond the initial $200,000. At no time prior to the initiation of this law suit did Investors explain to MOPERM why it was denying further payment.

**II.     Discussion**

This case presents an issue of contract interpretation. Both parties agree that Missouri law controls. Where there is no dispute of material fact, the interpretation and application of an insurance contract is a matter of law for the court to decide. *Fed. Ins. Co. v. Gulf Ins. Co.*, 162 S.W.3d 160, 164 (Mo. Ct. App. 2005). A court interpreting an insurance policy must consider the entire policy to determine whether any words or phrases are ambiguous. *Windsor Ins. Co. v. Lucas*, 24 S.W.3d 151, 153 (Mo. Ct. App.

3

2000). An insurance contract is ambiguous if there is duplicity, indistinctness or uncertainty in its meaning such that it is reasonably open to different constructions. *State Farm Mut. Auto. Ins. Co. v. Bridges*, 6 S.W.3d 170, 173 (Mo. Ct. App. 1999). A disagreement between the parties as to the meaning of the policy language does not suffice to create an ambiguity. *J.S. DeWeese Co. v. Hughes-Treitler Mfg. Corp.*, 881 S.W.2d 638, 644 (Mo. Ct. App. 1994). If a contract of insurance is unambiguous, it is to be enforced in accordance with its terms. *Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*, 195 F.3d 368, 377 (8th Cir. 1999) (following Missouri law).

Of the four policy provisions in the "Limits of Liability" section quoted above, there is no dispute as to the meaning and effect of Items 1a and 2a, the per-occurrence limits. MOPERM retains liability itself for the first $900,000 of any accident or event under Item 1a, its per-occurrence retained limit. Although neither the policy nor the parties use the term "deductible" to describe Item 1a, it is helpful to think of the $900,000 retained limit as a per-occurrence deductible or "co-pay" that MOPERM must meet before triggering the policy. If it meets this deductible, i.e., if MOPERM's claims for a single accident or event exceed $900,000, then MOPERM may submit a claim to Investors for the excess liability. Investors' total liability for all claims arising out of that single accident or event is limited to $100,000 under Item 2a, its per-occurrence liability limit. Thus, if MOPERM were subject to $1,500,000 in liability for a single accident, MOPERM would meet its per-occurrence retained liability of $900,000. It could then

4

tender the claim to Investors, whose own liability would be limited to $100,000; i.e., the most Investors would have to pay on all claims arising from that one accident would be $100,000. If all the combined claims on that single accident totaled only $901,000, MOPERM would have to pay the first $900,000; Investors, the next $1,000.

Where the parties disagree is as to the meaning of Items 1b and 2b, MOPERM's aggregate retained limit and Investors' aggregate liability limit. MOPERM contends that this second set of limits reflects an additional layer of excess coverage, distinct from the per-occurrence coverage contemplated by Items 1a and 2a. MOPERM argues that once the total of all the claims it pays out during the coverage period exceeds MOPERM's aggregate retained limit of $986,200, any additional liability incurred during that coverage period must also be reimbursed by Investors even if Investors has already paid MOPERM its $100,000 per-occurrence limit for each additional accident.

Concrete examples are helpful to illustrate the flaw in MOPERM's position. Suppose MOPERM's clients have three accidents during the two-month coverage period governed by the policy, each resulting in a $1,000,000 judgment. MOPERM would meet its per-occurrence retained limit for each claim because each exceeds $900,000. Thus, under Items 1a and 2a, Investors would have to reimburse MOPERM for $100,000 for each accident, or $300,000 total. At that point, MOPERM would have retained $2,700,000 in liability since it has itself paid $900,000 on each of the three claims; thus, it would also have exceeded its aggregate retained liability of $986,200 under Item 1b. Under MOPERM's reading of the policy, MOPERM could then tender an additional

5

claim to Investors for the liability MOPERM had incurred in excess of its $986,200 aggregate retained limit, i.e., $1,713,800. MOPERM's concedes that the most Investors would have to pay under this interpretation would be Investors' aggregate liability limit of $493,140. Thus, Investors would have to reimburse MOPERM a total of $793,140 for the three accidents: $100,000 for each accident under the per-occurrence provisions, plus $493,140 in aggregate liability under the aggregate provisions. That amounts to $264,380 in liability per accident, more than double the per-occurrence limit of the policy. In other words, MOPERM's argument would effectively abrogate the $100,000 per-occurrence liability limit set out in Item 2a.

Applying MOPERM's interpretation of the policy to the facts of the present case creates the same problem. Because MOPERM has paid out over $1,500,000 for the Long accident claim and over $1,000,000 for the Orman/Gates accident claims, it has easily exceeded both its $900,000 per-occurrence retained liability and its $986,200 aggregate retained liability. But Investors has already reimbursed MOPERM $100,000 for each case, the per-occurrence limit of the policy. If Investors were required to pay its aggregate liability limit of $493,140 in addition to the $200,000 it has already paid, Investors would effectively be paying $346,570 per accident, more than triple the per-occurrence limit imposed by Item 2a. There is no language in Item 2a or any other provision of the policy that can reasonably be read to abrogate the $100,000 per-occurrence limit. Consequently, MOPERM's argument–that Investors' aggregate liability

6

limit is really a second layer of coverage above and beyond the per-occurrence coverage–must be rejected.

The U.S. District Court for the Eastern District of Missouri has reached the same conclusion in a case involving similar policy language. In *Cincinnati Ins. Co. v. TV Eng'g Corp.*, 265 F. Supp. 2d 1078 (E.D. Mo. 2003), the Court considered a general liability insurance policy containing the following "Limits of Insurance":

| | |
|---|---|
| Each Occurrence Limit | $1,000,000 |
| Products-Completed Operations Aggregate Limit | $2,000,000 |

*Id.* at 1079. Plaintiff insurance company had sued its insured, the manufacturer of a product that caused two deaths in a single accident, for a declaratory judgment that Plaintiff insurer's liability for the accident could not exceed the $1,000,000 Per Occurrence Limit enumerated in the policy. Defendant manufacturer argued that it was entitled to the $2,000,000 limit because the policy was ambiguous and should be construed against the insurance company. The court held that "[t]here is no conflict or ambiguity in a policy that provides a per-occurrence limit and an aggregate limit." *Id.* at 1081. It further concluded that if the Defendant could recover more than $1,000,000 for a single accident, such additional recovery would "abrogate . . . the per-occurrence limit." *Id.*

The better interpretation of the $493,140 aggregate liability limit established in Item 2b is that it is simply the absolute maximum Investors can be made to pay for all claims combined during the coverage period. It would not be uncommon to find an aggregate limit and a per-occurrence limit employed in the same insurance policy; indeed,

7

they complement one another. "A[ per-]occurrence limit is the maximum amount the insurer will pay for a single event, while an aggregate limit is the maximum amount the insurer will pay for all events that occur within a policy period." *International Surplus Lines Ins. Co. v. Fireman's Fund Ins. Co.*, 998 F.2d 504, 505 (7th Cir. 1993). "An aggregate limit is 'the maximum limit of coverage available under a liability policy during a specified period of time...regardless of the number of separate accidents that occur or the number of claims that may be made.'" *North Am. Philips Corp. v. Aetna Casualty & Sur.*, 1995 Del. Super. LEXIS 354, *7-8 (Del. Super. Ct. 1995) (quoting RUPP, INSURANCE & RISK MANAGEMENT GLOSSARY at 19 (1991)). "Its counterpart is the per occurrence limit, which expressly limits the amount to be paid under an insurance policy for liability arising out of each compensable occurrence." *Id.*

There is no ambiguity created by Items 1a, 2a, and 2b. As explained above, Item 1a is a kind of per-occurrence deductible that MOPERM must meet before triggering Investors' liability for any given event. Once triggered, Item 2a limits Investors' liability for that event to $100,000, and Item 2b further limits Investors' liability for all events combined during the coverage period to $493,140. MOPERM contends, however, that Item 1b–its $986,200 aggregate retained liability–has no clear purpose within the policy unless it is to trigger the Investors' aggregate liability. Thus, claims MOPERM, the policy is ambiguous and should be construed against Investors.

The Court finds no more ambiguity in Item 1b than in any of the other three provisions in the Limits of Liability section of the policy. Both Items 1a and 1b are

8

designated as "Insured's Retained Limit," the amount of liability MOPERM is expected to bear itself, like a deductible, before seeking reimbursement from Investors. The difference between the two is that Item 1a is a per-occurrence deductible whereas Item 1b is an aggregate deductible. Either provision can trigger coverage once it is met. Item 1a triggers coverage if a single claim costs MOPERM more than $900,000. Item 1b triggers coverage if the total of all claims paid by MOPERM during the coverage period exceeds $986,200. The overlapping nature of these deductibles is evident in the language of Item 1b which provides that $986,200 is the "[u]ltimate net loss (annual aggregate) as result of all . . . claims made *because of the limits retained under 1a above* and as further defined herein." (Emphasis added.) In other words, if the total of all claims paid by MOPERM as a result of its $900,000 per-occurrence deductible ever reaches its aggregate retained limit of $986,200, the next claim may be submitted to Investors for reimbursement even though that particular claim is for less than $900,000. In either case, however, the coverage triggered is still capped by the per-occurrence and aggregate liability limits of Items 2a and 2b.

    Again, concrete examples are instructive. Suppose MOPERM's clients have seven accidents, each precipitating a $500,000 judgment. The first accident does not exceed MOPERM's retained limit under either 1a or 1b so MOPERM must cover the whole cost itself. The second accident does not satisfy the per-occurrence retained limit because that claim itself is less than $900,000. However, paying the claim puts MOPERM over its aggregate retained limit of $986,200 by $13,800 because it had already paid out $500,000

on the first claim. Even though MOPERM has not met its per-occurrence deductible, it may still tender a claim to Investors because MOPERM has exceeded its aggregate deductible. Thus, Investors would have to reimburse MOPERM $13,800 for the second accident. The third accident also does not satisfy the $900,000 per-occurrence deductible of Item 1a. However, now that MOPERM has satisfied its aggregate deductible by having already paid out $986,200 for the first two accidents, it may immediately tender the third accident claim to Investors under Item 1b. Even so, Investors's liability is still capped at $100,000 by the per-occurrence liability limit of Item 2a, and MOPERM must pay the remaining $400,000 itself. The same analysis holds true for the fourth, fifth, and sixth accidents: MOPERM must reimburse another $100,000 for each. The seventh accident may also be immediately tendered to Investors, but now Investors' liability is capped at $79,340 because it has already paid out $13,800 for the second accident and another $100,000 each for the third through sixth accidents for a total of $413,800. The first $79,340 of reimbursement for the seventh accident would put Investors over its aggregate liability limit of $493,140, and all coverage would then be exhausted for the coverage period. If MOPERM's clients have any further accidents, Investors would owe nothing no matter what amount the claim was for.

In the context of the present case, MOPERM has clearly met its $900,000 per-occurrence deductible for both the Long and Orman/Gates claims. Accordingly, Investors has reimbursed MOPERM $100,000 for each claim, its per-occurrence limit for each claim. The fact that MOPERM has also clearly met its $986,200 aggregate

10

deductible for the coverage period means only that subsequent claims made by MOPERM do not have to meet the per-occurrence deductible before they can be tendered to Investors. It does not mean that Investors owes MOPERM additional coverage for the two claims beyond what it has already been reimbursed.[3]

An insurance contract susceptible to two interpretations is not ambiguous if only one of those interpretations is reasonable and plausible. *Parker v. Pulitzer Publishing Co.*, 882 S.W.2d 245, 250 (Mo. Ct. App. 1994) Reading Items 1b and 2b to create a second layer of coverage above and beyond that established by Items 1a and 2a is not reasonable because it renders the per-occurrence limit of Item 2a meaningless. By contrast, Reading Items 1a and 1b as two different thresholds for triggering the same coverage, which is in turn subject to two different caps in Items 2a and 2b, is a reasonable interpretation of the policy and gives meaning to all the terms in the policy. Thus, the Court concludes that the policy unambiguously provides no additional coverage to

---

[3]The Court notes that the parties' intractable–and not entirely unreasonable–differences of opinion as to the meaning of the policy may well stem from the less than 10 percent difference between the per-occurrence and aggregate retained limits established in Items 1a and 1b. One would normally expect a per-occurrence retained limit to be far lower than an aggregate retained limit. When the two are so close, the per-occurrence limit nearly swallows the aggregate limit. This case is a prime example: a claim which satisfies a per-occurrence retained limit of $900,000 will almost always satisfy, or at least go most of the way toward satisfying, an aggregate retained limit of $986,200. Any subsequent claims, even small ones, will likely push the aggregate over its threshold for coverage. There is very little reason to have a per-occurrence limit at all in such cases because it becomes irrelevant after the first time it is satisfied. In the present case, the slim difference between the two was the consequence of a truncated coverage period for which the aggregate limits were prorated. This case would likely not have arisen if the aggregate retained limit were $6,000,000 instead of $986,200 and the aggregate liability limit were $3,000,000 instead of $493,140. However, the parties agreed to the contract as clearly written and both are bound by it.

MOPERM for the Long and Orman/Gates claims beyond the $200,000 Investors has already paid.

## III. Conclusion

Accordingly, it is hereby

ORDERED that MOPERM's Motion for Summary Judgment [Doc. # 21] is DENIED, and it is

ORDERED that Investors's Cross-Motion for Summary Judgment [Doc. # 27] is GRANTED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: August 16, 2006
Jefferson City, Missouri