IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MISSOURI PUBLIC ENTITY RISK MANAGEMENT FUND, </br></br>Plaintiff, </br></br>v. </br></br>INVESTORS INSURANCE COMPANY OF AMERICA, </br></br>Defendants. | ) ) ) ) ) ) ) Case No. 05-4386-CV-C-NKL ) ) ) ) ) |

ORDER

Plaintiff Missouri Public Entity Risk Management Fund's ("MOPERM") has brought a claim against Defendant Investors Insurance Company of America's ("Investors") for declaratory relief and damages on an excess insurance policy it purchased from Investors. The Court has already resolved one issue between the parties with regard to MOPERM's Self Insured Retention ("SIR"), a kind of deductible which must be exhausted before the excess coverage policy is triggered. (See August 16, 2006 Order [Doc. # 31]). The parties now raise a second legal question as to whether MOPERM's defense costs incurred on claims within its Aggregate SIR count toward that SIR, thus triggering excess coverage sooner, or whether only MOPERM's indemnification payments to its clients count toward the SIR. Pending before the Court is Investors' Motion for Summary Judgment [Doc. # 44]. For the reasons set forth below, the Motion is denied.

1

**I.  Background**

MOPERM is a risk management pool created by statute to obtain liability insurance for Missouri public entities and their officers and employees.  *See* Mo. Rev. Stat. § 537.700.  From December 31, 1996, through December 31, 1998, MOPERM purchased excess commercial general liability coverage, police professional liability coverage, public officials liability coverage, and business automobile liability coverage from Investors, all of which were subject to the terms, conditions, exclusions, and endorsements of the policy.  The sections of the policy dealing with each type of coverage all contain the same assurance that Investors "will pay those sums that the [MOPERM] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this coverage applies."  The policy further states that "[Investors'] right and duty to defend end when we have used up the applicable limits of insurance in payment of judgments or settlements."  Each type of coverage was limited by the policy declarations page which set forth Investors' limits of coverage as well as MOPERM's Self Insured Retention as follows:

**Insured's Retained Limit:**

| | | |
|---|---|---|
| Item 1a. | $900,000<br>Each occurrence | Ultimate net loss as the result of any one occurrence, accident, wrongful act, error or omission because of bodily injury, personal injury, property damage, police professional liability or public officials professional liability or any combination thereof. |
| Item 1b. | $6,000,000<br>Aggregate | Ultimate net loss (annual aggregate) as the result of all occurrences, accidents, wrongful acts, errors or omissions or claims made because of the limits retained under 1a above and as further defined herein. |

2

**Company's Liability:**

| | | |
|---|---|---|
| Item 2a. | $100,000<br>Each occurrence | Ultimate net loss as the result of any one occurrence, accident, wrongful act, error or omission because of bodily injury, personal injury, property damage, police professional liability or public officials professional liability or any combination thereof. |
| Item 2b. | $3,000,000<br>Aggregate | Ultimate net loss as the result of any combined occurrences, accidents, wrongful acts, errors or omissions because of bodily injury, personal injury, property damage, police professional liability or public official professional liability or any combination thereof. |

As the Court explained in its previous summary judgment order SIR acts like a deductible which MOPERM must exhaust before the policy is triggered. The deductible or SIR for a given claim is exhausted if either (a) MOPERM's losses from that single claim exceed $900,000, or (b) MOPERM's combined losses for the year to date have exceeded $6,000,000. If either SIR is exceeded, Investors is obligated to reimburse MOPERM for its losses in excess of the SIR up to $100,000 per claim. Once the total amount of excess coverage paid in a given year reaches $3,000,000, all coverage is exhausted. *See* August 16, 2006 Order [Doc. # 31].

The Self Insured Retention as set forth on the Policy Declarations page is further modified by Endorsement # 1, which provides:

> [MOPERM] shall have the obligation to provide, at [its] own expense, proper defense and investigation of any claim and to accept any reasonable offer of settlement within the Self Insured Retention. [MOPERM]'s obligation to provide for [its] own defense is terminated upon the exhaustion of the Self Insured Retention. Compliance with this clause is a condition precedent for coverage under this policy. In the event of the

3

failure of [MOPERM] to comply with this clause, no loss, cost, or expense shall be payable by [Investors].

In the event of a claim or claims arising which appear likely to exceed the Self Insured Retention, no costs (other than adjusting expenses) shall be incurred by [MOPERM] without the written consent of [Investors].

[Investors] shall have the right in all cases to assume charge of the investigation, defense and/or settlement of any claim and upon written request from [Investors] [MOPERM] shall pay directly any expense or loss incurred by [Investors] in the investigation, defense and/or settlement of any claim and reimburse [Investors] for any and all amounts paid by [Investors] within the Self Insured Retention. . . .

[MOPERM] shall provide [INVESTORS] with loss runs on a quarterly basis of all claims which may affect this policy. Such reports shall include the name of the claimant, date of loss, description of loss, type of injury, the amount of paid loss and expense and the estimated future amount of loss and expense. . . .

At the end of the 1997 policy year, MOPERM submitted a "Loss Run" to Investors indicating total expenditures for 1997 of $6,211,852.21. MOPERM's "Loss Run" at the end of 1998 indicated total expenditures of $6,578,802.53. When Investors requested that MOPERM's loss runs be itemized in terms of what amounts went to indemnification as opposed to defense, MOPERM submitted "Loss and Loss Expense" reports for both years. This second round of reports showed that MOPERM's indemnification payments for 1997 and 1998 were only $4,348,339.42 and $ 4,901,067.17, respectively, once the costs of defense were subtracted from the total expenditures. Although the parties agree that these figures reflect the totals expended by MOPERM on indemnification and expenses for 1997 and 1998, it is unclear from the record what portion of MOPERM's

4

expenditures for each year was reimbursed by Investors on individual claims that exceeded the per occurrence SIR.

## II. Discussion

The interpretation of an insurance policy presents a question of law. *Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*, 195 F.3d 368, 375 (8th Cir. 1999) (applying Missouri law). If a policy is unambiguous, it is to be enforced according to its terms. *Id.* at 377. Whether the language of a policy is ambiguous is also a question of law. *Id.* "An ambiguity arises where there is a duplicity, indistinctness, or uncertainty in the meaning of the words used in an insurance contract." *Am. Family Mut. Ins. Co. v. Peck*, 169 S.W.3d 563, 567 (Mo. Ct. App. 2005). "Mere disagreement by the parties over the meaning of the contract will not constitute an ambiguity; a contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms." *J.S. DeWeese Co. v. Hughes-Treitler Mfg. Corp.*, 881 S.W.2d 638, 644 (Mo. Ct. App. 1994). The Court interprets insurance policy language by "read[ing] the contract as a whole and determin[ing] the intent of the parties, giving effect to that intent by enforcing the contract as written." *Peck*, 169 S.W.3d at 567. "The fact that a term remains undefined in a policy does not necessarily render it ambiguous." *Id.*

Investors seeks summary judgment as to MOPERM's 1997 and 1998 claims on the grounds that MOPERM's Self Insured Retention excludes defense costs, i.e., only expenditures for judgments and settlements count toward MOPERM's per occurrence and

5

aggregate deductibles. Under the SIR provisions, the policy is triggered when MOPERM's "[u]ltimate net loss as the result of any one occurrence, accident, wrongful act, error or omission because of bodily injury, personal injury, property damage, police professional liability or public officials professional liability or any combination thereof" reaches either $900,000 on a single claim or the aggregate of all claims in one year reaches $6,000,000. Although the term "ultimate net loss" is not defined in the policy, Investors argues that it can only mean total expenditures less any defense costs. *See* AM HERITAGE DICTIONARY at 1181, Houghton Mifflin (4th ed. 2000) (defining "net" as "remaining after all deductions have been made, as for expenses"). Since "ultimate net loss" cannot mean the whole of all losses, Investors' assumes, something must be deducted from the whole of all losses to achieve the ultimate net loss. And since MOPERM has only two kinds of losses, indemnification payments and defense costs, ultimate net loss must mean the whole of all losses minus defense costs.

Nothing in the language of the policy itself supports Investors's interpretation of "ultimate net loss." Although the word "net" often means the amount remaining after all deductions, that definition usually applies to revenue, which is represented in positive numbers. For example, a plaintiff who wins a $100,000 judgment but incurs $30,000 in attorneys' fees has a "net" recovery of $70,000. When used in conjunction with the word "loss," however, the word "net" implies that expenses are added to the loss rather than subtracted. For example, a defendant who loses a $100,000 judgment and incurs $30,000 in attorneys' fees has a "net" loss of $130,000, not $70,000. Thus, it makes no sense to

6

contend that the phrase "ultimate net loss" as used in the SIR excludes the costs of defense. Indeed, the plain meaning of those words compels precisely the opposite conclusion. "Ultimate net loss" must include both judgments and settlements against MOPERM clients as well as their defense costs.

Investors also relies on Endorsement #1, which provides that "[MOPERM] shall have the obligation to provide, at [its] own expense, proper defense and investigation of any claim and to accept any reasonable offer of settlement within the Self Insured Retention." Investors claims that this language is further proof that defense costs are not considered as part of the ultimate net loss. MOPERM does not dispute that it must bear the costs of its clients' defense within the SIR, however. It simply contends that those defense costs contribute toward the SIR. The plain language of Endorsement # 1 vindicates MOPERM's position. If this language meant that no defense costs incurred within the SIR counted toward the SIR, it would also seem to mean that no settlement accepted within the SIR counted toward the SIR. Even Investors does not contend that. This provision merely states that MOPERM must pay for the defense of its clients as well as any settlements or judgments against them until it satisfies the deductible for its excess insurance policy. Both the reasonable settlements MOPERM is obligated to accept and the defense costs it incurs either winning or losing judgments count toward the SIR. As Endorsement # 1 goes on to provide,

> [MOPERM]'s obligation to provide for [its] own defense is terminated upon
> the exhaustion of the Self Insured Retention. Compliance with this clause is
> a condition precedent for coverage under this policy. In the event of the

7

> failure of [MOPERM] to comply with this clause, no loss, cost, or expense shall be payable by [Investors].

The final sentence of the paragraph implies that Investors will pay for losses, costs, and expenses once the SIR is reached so long as MOPERM has provided its own defense and accepted reasonable settlement offers up until that point. It would make little sense to interpret a policy with this language as requiring Investors to pay defense costs after the SIR without counting defense costs up until that point toward the SIR.

The only other language Investors points to within the four corners of the agreement to support its interpretation of "ultimate net loss" is the language of the various coverage provisions. Each of the sections dealing with a different type of coverage provides that Investors "will pay those sums that [MOPERM] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this coverage applies." Investors suggests that this clause indicates payment only for "damages" and not for defense costs. But the language cited is simply a limitation on the kinds of damages covered. In other words, it deals only with Investors' duty to indemnify. Other provisions, like those cited above, deal with Investors' duty to defend and the only limitation on that duty is that the SIR be exhausted first. Indeed, Endorsement # 1 provides that Investors has "the right in all cases to assume charge of the investigation, defense and/or settlement of any claim" even before the SIR is exhausted. If it does, however, "[MOPERM] shall pay directly any expense or loss incurred by [Investors] in the investigation, defense and/or settlement of any claim and reimburse [Investors] for any and all amounts paid by [Investors] within the Self Insured Retention." Thus,

8

Investors reserves the right to defend at any time it sees fit but MOPERM still bears all costs, and must reimburse Investors, until the SIR is reached. It would make little sense if MOPERM had to reimburse Investors for defense costs, judgments and settlements whenever Investors chose to intervene, but only got credit toward the SIR for reimbursing the judgments and settlements.

Perhaps the strongest evidence in the contract language that MOPERM's defense costs counts toward the SIR is found at the end of Endorsement # 1, which requires that

> a) [MOPERM] shall provide [INVESTORS] with loss runs on a quarterly basis of all claims which may affect this policy. Such reports shall include the name of the claimant, date of loss, description of loss, type of injury, the amount of paid loss and expense and the estimated future amount of loss and expense. . . .

There would be no reason to require MOPERM to include "the amount of . . . expense and the estimated future . . . expense" in its quarterly loss runs before the SIR was exhausted unless those expenses counted toward the SIR. As MOPERM notes, it would be like requiring MOPERM to account for the number of office supplies used each quarter. The obvious purpose of allowing Investors to keep track of how much MOPERM is spending to defend each case is so that Investors can take over a defense if it believes MOPERM is spending too much. But if MOPERM's defense costs do not erode the SIR, there would never be a reason for Investors to take over a defense before the SIR was exhausted merely because the expenses were getting too high.

MOPERM has provided the Court with a considerable volume of parol evidence in an effort to prove that the parties intended for defense costs to erode the SIR. However,

9

because the Court concludes that the terms of the policy at issue are not ambiguous, such parol evidence is inadmissible. *Union Elec. Co. v. Fundways, Ltd.*, 886 S.W.2d 169, 170 (Mo. Ct. App. 1994) ("Extrinsic evidence . . . is generally not admissible to vary, add to, or contradict the terms of an unambiguous and complete written document, nor may such parol evidence be used to create ambiguity in an otherwise unambiguous document.") It is also unnecessary. Investors' summary judgment motion depends on an interpretation of the policy in which "ultimate net loss" does not include defense costs. The plain, unambiguous language of the policy requires a different interpretation. Costs incurred by MOPERM in defending its clients are part of the "ultimate net loss" which counts toward its Self Insured Retention.

### III. Conclusion

Accordingly, it is hereby

ORDERED that Investors' Motion for Summary Judgment [Doc. # 44] is DENIED.

 s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: <u>April 17, 2007</u>
Jefferson City, Missouri